Argued and submitted September 6, 2013, affirmed August 13, 2014

In the Matter of the Guardianship and Conservatorship of
Phyllis M. Symons, a Protected Person.

STATE OF OREGON,
Long Term Care Ombudsman,
*Appellant,*

*v.*

Phyllis M. SYMONS
and Molly K. Smith,
*Respondents.*

Multnomah County Circuit Court
020791261; A152489

333 P3d 1170

Carolyn Alexander, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Matthew Whitman argued the cause and filed the brief for respondent Molly K. Smith.

No appearance for respondent Phyllis M. Symons.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

## SCHUMAN, S. J.

This case involves the long term care of a protected person, Symons, who was moved by her guardian and conservator, Smith, from one care facility to another. When Smith refused to disclose the address of the facility to which she had moved Symons, the Long Term Care Ombudsman (LTCO) petitioned the circuit court for an order compelling Smith to provide the LTCO with that information. The LTCO maintained that it had not only the legal authority to visit Symons at that address, but a legal obligation to do so even if doing so caused Symons distress, until and unless Symons herself personally informed the LTCO that she did not want the visits. Smith, on the other hand, argued that she had a legal obligation to act in the best interest of Symons and that disclosing Symons's address would be contrary to that interest. The circuit court agreed with Smith and denied the petition. The LTCO appeals. We affirm.

Most of the facts are undisputed. Where a dispute exists, we accept the trial court's findings where there is evidence in the record to support them. *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 489, 326 P3d 1181 (2014). Symons suffered a stroke in 2002 at the age of 58. As a result, she is partially paralyzed, has a severely compromised ability to communicate, and is easily manipulated. When the events relevant to this litigation began, she was receiving long term adult foster care at a facility called Maria's Care Home. While there, she became dissatisfied with the relative then serving as her guardian and conservator. That relative was replaced by Smith, who is an attorney, a registered nurse, and a court-approved fiduciary. In February 2010, however, Symons (through counsel) filed an objection to Smith. While Symons, her attorney, the representatives of Maria's Care Home, and Smith attempted to reach an agreement, Symons appears to have vacillated between wanting to keep Smith as her guardian, to change guardians, and to remove the guardianship and conservatorship entirely. Ultimately, no new guardian was appointed. The LTCO nonetheless responded to some concerns that Symons had by invoking its obligation to open an investigation into the care she was

receiving. *See* ORS 441.109(1) (LTCO "shall * * * [i]nvestigate and resolve complaints made by or for residents of long term care facilities").[1]

On January 30, 2012, Smith—concerned about Symons's treatment at Maria's Care Home—moved Symons to another facility. Apparently, the transition was not smooth; a Department of Human Services representative concluded that Maria's Care Home interfered with Symons's transfer and caused her stress. Smith subsequently notified the court that the transfer had occurred. The notice did not disclose the address or name of the new facility, nor was it expressly required to; Smith did not send a copy of the notice to the LTCO, which she *was* required to do. ORS 125.320(3)(c)(B). The LTCO learned of the transfer independently and, in a letter to the court, explained that it needed Symons's address in order to complete its investigation of her treatment. Before the court could act, the LTCO filed a Petition to Disclose Protected Person's Information, seeking an order requiring Smith to reveal Symons's whereabouts.

At the hearing to address that petition, the deputy LTCO argued that, under the relevant statutes and rules, the LTCO has the right of entry into adult foster care facilities and to interview residents in private regarding complaints, and, if the protected person did not want to communicate with the LTCO, that decision had to be communicated directly to the LTCO and not by an intermediary. Thus, the LTCO argued, the order to disclose Symons's whereabouts was necessary in order for the LTCO to perform its statutory obligations. Smith, in response, presented the court with a letter from Fisher, a psychologist who was acting

---

[1] The federal Older Americans Act, 42 USC § 3001 *et seq.*, provides federal funding to be used by states for implementing and operating programs to protect the vulnerable elderly. To receive these funds, a state must, among other things, establish and operate an Office of the State Long Term Care Ombudsman. 42 USC § 3058g(a)(1). Oregon's response is ORS 441.100 to 441.153, entitled "Long Term Care Ombudsman." The 2013 and 2014 Legislative Assemblies passed amendments to that chapter, Oregon Laws 2013, chapter 717, and Oregon Laws 2014, chapter 117, which became operative on July 1, 2014. The changes are inconsequential for purposes of this opinion. For convenience, we use the text that was operative when the case was tried, briefed, and argued. Further, many of the duties of the LTCO may be performed by a designee. ORS 441.109(8). Hereafter, our references to the LTCO are to that entity or a designee.

as the court-appointed visitor.[2] Fisher supported Smith's refusal to disclose Symons's location to the LTCO, noting that "[t]he involvement of the [LTCO] in the past has escalated Ms. Symons emotionally and has been expensive." At the end of the hearing, the court ruled, in part, as follows:

"THE COURT:   [I]t's absolutely true that I've put tremendous weight on Dr. Fisher's perceptions and reports and recommendations, and, frankly, there's—Ms. Symons has a lawyer, has a guardian, has a conservator, has Dr. Fisher looking out for her best interest. I'm aware that historically, and apparently from what I can glean today, currently there's conflict between people who care about and want to protect Ms. Symons.

"The evidence that I have is that the reason that the [LTCO] wants to contact Ms. Symons is to report back to her from a complaint that occurred, I think in 2010 * * *. That was certainly [the deputy LTCO's] testimony * * *.

"Ms. Symons, as a practical matter, cannot communicate and cannot understand what's going on here and whether—and so if I balance the potential agitation and harm that comes to Ms. Symons versus the [LTCO] wanting to report back to her or, frankly, to see how she's doing, I have to, again * * * figure out what's best for Ms. Symons, and it's my finding and my order that it's not—that the guardian is not required, in this particular rare circumstance, to disclose a protected person's information."

This appeal ensued.

Identifying the parties' positions and emphasizing certain facts and conclusions will facilitate resolving this case. The LTCO maintains, in essence, that it has a statutory mandate to contact residents of long term care facilities, without exception, in order to resolve a complaint about the resident's situation, and that, by refusing to disclose Symons's location, Smith is interfering with that mandate. That much of the LTCO's position is correct. The LTCO's duties—which, by statute, it "*shall* carry out"—include "[i]nvestigat[ing] and resolv[ing] complaints made by or for residents of long term

---

[2] A "visitor" is "a person appointed by the court * * * for the purpose of interviewing and evaluating a respondent or protected person." ORS 125.005(11). The visitor is empowered to interview the protected person where that person is located. ORS 125.150(3).

care facilities." ORS 441.109(1) (emphasis added). In order to perform that duty, the LTCO "shall have the right of entry into long term care facilities at any time considered necessary and reasonable" by the LTCO, in order to "[i]nvestigat[e] and resolv[e] complaints" and "[i]nterview[] residents." ORS 441.117(1)(a), (b). In conducting its investigation, the LTCO "shall have access to long term care facility records that relate to" that investigation. OAR 114-005-0030(2). When the investigation is done, the LTCO "shall report opinions or recommendations to the party or parties affected thereby." ORS 441.121. Most relevant to this case, "No person shall willfully interfere with the performance of the [LTCO's] official duties," and "[i]ndividuals interfering with the [LTCO's] official duties will be referred to the appropriate agency for sanctions or other actions." OAR 114-006-0000. By refusing to disclose Symons's location, Smith is clearly interfering with the LTCO's performance of its immediate duties— investigating and reporting on complaints.

Smith does not deny that assertion. However, she maintains that, as Symons's guardian, she has a superseding duty to promote Symons's interests. That, too, is correct. Her mandate as a court-appointed guardian is to "promote and protect the well-being of the protected person," ORS 125.300(1), and she can be removed by the court whenever, in the court's judgment, doing so "is in the best interests of the protected person," ORS 125.225(1). Her duties include "provid[ing] for the care, comfort and maintenance of the protected person." ORS 125.315(1)(b).

Further, the court ruled that Smith's decision to withhold Symons's address was, in fact, in Symons's best interest. Although the LTCO, in one brief footnote, contends that the court's conclusion is not supported by sufficient evidence, we disagree. Symons's attorney and the court-appointed visitor both supported Smith's assertion that disclosing Symons's address would *not* be in her best interest.[3]

---

[3] The LTCO appears to argue that, although we review historical facts for any evidence, we review the court's best interest determination for errors of law. Smith agrees that our review of historical facts is for any evidence, but maintains that the best interest determination is for abuse of discretion. We need not resolve that dispute here, however, because under either standard, the trial court's determination is adequately supported.

Thus, put succinctly, this case requires us to determine whether, as the LTCO maintains, ORS chapter 441 requires the court to compel Symons's guardian to help the LTCO perform its statutorily mandated duties, even when performing those duties is contrary to Symons's interest. We conclude that the LTCO's position is wrong.

Most obviously, where statutes appear to impose conflicting duties on parties or create ambiguity with respect to a party's duties, the conflict or ambiguity generally is resolved through adjudication—here, by the court that has jurisdiction over the protective proceeding. The mandate of the court in protective proceedings is to protect the welfare of protected persons, and the court's authority in pursuing that objective is extremely broad. Subject to exceptions that are not relevant to this case,

"a court having jurisdiction over a protective proceeding shall exercise continuing authority over the proceeding. * * * [T]he court may act upon the petition or motion of any person or upon its own authority at any time and in any manner it deems appropriate to determine the condition and welfare of the respondent or protected person and to inquire into the proper performance of the duties of a fiduciary appointed under the provisions of this chapter."

ORS 125.025(1). In the present case, the parties chose to submit their dispute to the court, the court resolved it in favor of Smith, and the court's resolution was supported by sufficient evidence. The fact that the resolution privileged Smith's obligation over the LTCO's is simply a result of the court performing its inherent dispute-resolving adjudicative function.

Second, the parties' duties are not on a par with each other. It is true that the LTCO and the guardian both have the ultimate objective of protecting Symons's welfare. However, the LTCO's connection to that objective is indirect and instrumental. Its direct function is to monitor care facilities and investigate complaints; that function, *in turn*, serves to promote the welfare of the protected person. The guardian's duty, on the other hand, is immediately and directly to promote and protect the welfare of the protected person. Thus, when the LTCO's performance of its

immediate and direct function (monitoring long term care facilities, investigating complaints, and resolving them) no longer serves to promote its ultimate function (promoting the protected person's welfare), it makes no sense to insist that the LTCO's performance of its function must proceed without interference from the guardian's performance of *its* function. In sum, the court did not err in denying the LTCO's petition to compel Symons's guardian to act contrary to Symons's interest.

Affirmed.